The issue before the court this morning in Mr. Hurley's case is whether the district court erred in applying a 1 to 167 ratio. While applying, we submit that it's clear error as to the court's determination of facts, and de novo in the interpretation and application. You did not make the first of your two objections, I believe, to the district court, is that correct? No, Your Honor, I respectfully submit that the purposes of plain error are not furthered here because... Excuse me, would you answer the question? I'm sorry, did I hear you? Yes or no answer. I'm sorry. Did you make your first objection to the district court? Yes, Your Honor. An aspect of the argument before the district court was certainly that marijuana was a 1 to 1 ratio to the substance that was the subject of the conviction for Mr. Hurley. All right. The times that the attorney says you have to use marijuana, that just makes sense. And the fact that the judge says phrases, and this is at the appendix at 16 and at 98, the judge says, as synthetic marijuana versus marijuana, there's some intuitive appeal to the idea that it ought to be. And then I need someone to explain to me why it's a mistake to think of it, referring to synthetic cannabinoid product, as synthetic marijuana. So we submit that the purposes of plain error aren't served if the judge understands what the argument is, and that is this substance equates 1 to 1 with marijuana, not pure THC. And as to that substantive argument, the government's expert, Dr. Jordan Trekkie, sets up the question for the court on what's the most analogous substance. Dr. Trekkie's testimony makes clear that pure, unadulterated, synthetic cannabinoid psychoactive ingredients, the examples here being XLR-11 and Opfumedaca, line up, equate most with THC. Yes, Dr. Trekkie says there may be a ratio of 1 to 4. It's at least as powerful, if not more, but doesn't give a quantity for sure on how much more. Not an exact match. Of course, we don't have an exact match, or we wouldn't have this question. Or if the guidelines manual had that in its chart, we wouldn't have this question. The flip side of that, of course, is that once you have a leafy substance, the THC is in marijuana, and once the synthetic cannabinoid psychoactive ingredient is applied to an inert plant, those line up 1 to 1. And that's Dr. Trekkie's testimony, that in marijuana, the TCH, are those the right initials? THC, that's right. THC, excuse me. Yes, in any event. It's a natural chemical in marijuana, along with other chemicals, and the interaction of those chemicals moderates the effect of the drug, if you will. That's not true when the synthetic compound is sprayed onto the plant carrier. It is not, in effect, diluted by the other chemicals in the plant. And so it is, because it's not diluted, it is a more powerful way of taking the drugs. So does that make the marijuana comparison inept? Two responses. The first is Dr. Trekkie's own testimony in the Ramos case in front of the 8th Circuit. His own testimony is, when you take XLR-11 and you spray it among the inert plants, you in fact do dilute it. That's the Ramos case at page 919. That's in the majority opinion, not the dissent that I cited a few times. That's right. What was the testimony you were relying on? His testimony is, the process of spraying pure synthetic cannabinoid on plant material, quote, would dilute the synthetic cannabinoids over a greater volume of material. What does that mean? In the same way that getting rid of plant material and marijuana in steps increases the concentration of the drug from marijuana to hashish, the hashish oil, all the way to pure THC. Yes, but it doesn't seem to me that it addresses the distinction which Judge Lopez called to your attention. The problem is they're going in reverse order, right? For marijuana, it's already a plant, and you have to get rid of plant material to get down to the psychoactive drug that naturally occurs, tetrahydrocannabinol. For the synthetic, we're going in reverse order. We take the pureness of a little bit of a synthetic and psychoactive ingredient, but spray it over an entire bag of inert plant material. We take a huge bag, black bag of marijuana and a huge black bag of inert plant material that has been sprayed, and if you take the same amount of THC that marijuana could be reduced down to, take the same amount of XR-11, but spray it over an entire bag of Damiana leaves or marshmallow leaves or any other inert plant, it is going to be diluted. Therefore, it is less than if someone just has a bottle of XR-11 sitting on their desk. Did this expert give that testimony in this case? No, he didn't testify at all in this case. But he had an affidavit? He had two reports and his CV, yes. And did you call the district court's attention to this 8th Circuit case? I think that Ramos case came after this, yes. Okay, so this use of testimony which you're trying to make on appeal was not actually before the district court? That's correct, but I'm citing it to try to answer Your Honor's questions about that. There is this question about whether testimony from another case can be translated into this case. I understand, Your Honor, but I think it all goes to the question of does the government's own expert line up the analogous substances to show clear error? Okay, that's based on the testimony he gave through affidavit form in this case. Would you concede that his conclusion is rational? His conclusion is rational. What the district court takes from extrapolation is not because Dr. Trekkie lines up pure THC with the pure synthetic psychoactive ingredient, not the product. Dr. Trekkie is not drawing analogy to the product that's created to mimic marijuana where it's added to inert plant material and sprayed with acetone to create a mimic marijuana-like substance. Dr. Trekkie isn't comparing that to pure THC, but the district court turns around and does what we've maybe in a bad metaphor called mixing apples with orange juice. Apples and oranges, maybe. Apples and synthetic apples, maybe that's a good comparison. Apples, synthetic apples, there's going to be a difference. But here, this is apples and synthetic apple juice where all the inert material has been removed and we're no longer able to draw the lines that even Dr. Trekkie draws. As I understand it, you're making two basic arguments. The first is that there was procedural error by the district court in finding the table with the 1 to 167 ratio to be applicable. And secondly, you're making the argument that that ratio, which is in the guidelines, is irrational and should not be followed for that purpose. That's correct, Your Honor. I still haven't heard an argument as to why the district court committed procedural error in choosing the 1 to 167 ratio, which is in the guidelines. By applying United States Guidelines section 2D1.1, comment 6, and those three factors to get to the second and third factor and to wrongly find that the closest analogous controlled substance to the drugs involved here is pure THC and not marijuana. That's the guidelines error that leads to the procedural error of incorrectly calculating the guideline range from which the district court then departed. All right. I think we raise a few questions about weight. If an argument had been made about weight below, I'd have an argument before you. We're not making an argument that the district court made an error about weight, but our arguments about weight are relevant to show that same error in comparison of what is a pure substance, a small liquid form over here, a pure liquid substance over here, and by comparing, instead of comparing those, crossing the lines and comparing it to what weighs so much more. There is a certain, maybe you would characterize it as an irrationality in the sense that for the purposes of calculating weight, you do look at the plant material, which has the spray on it. That gives you the weight, right? Yes, Your Honor. But then when you try to go through the component or analysis, you forget that we're talking about a plant that has a synthetic compound spray on it. Then in order to do the comparative analysis, you forget about the plant and you just look at the synthetic compound separately and then do the comparative analysis. There is at least intuitively something, that seems odd. I guess that becomes your argument, is that correct? Yes, Your Honor. Even the statute that the government cites, which is 841, which often talks about the weight of a mixture containing an element, even 841B1D recognizes what permeates this entire case, and that is the guidelines and Congress recognize that as you take plant material away, potency goes up. Because under B1D, it takes 50 kilograms of marijuana, 10 kilograms of hashish, and only 1 kilogram of hashish oil to get the same penalty across the board. What changes? Plant material has been removed. What do we have in this case? Plant material has been added. Thank you. Good morning. Stephanie Frame from the United States. Let me just deal with the question that was just raised. It's very common in the drug laws to say, let's take cocaine. Most of our cocaine cases, the cocaine has been cut. Another substance has been added to dilute it. The controlled substance remains cocaine, and we add up all the weight, and that's what you're charged with. It's the weight of the entire substance. What makes the plant material different is it's naturally occurring plant material. It is, as you explained, Judge Lopez, when you were asking the question, marijuana is a cocktail of chemicals. It is THC, but it is mixed with other chemical material. That has a chemical difference, not just we cut it, not just we got some leaves out there that don't do anything. We just sprayed our chemical on it and then sold it so that we could have more to sell. That's the same as cocaine cut with some inner powder so that you get more cocaine to sell. The difference here, the reason the guidelines have this cascading effect for naturally occurring plants is that as you have less plants, I take it you have less of the other chemicals that moderate the THC. That does make sense, but what you have here is pure chemical just sprayed on a bunch of leaves, and it does dilute it. There's no question that it dilutes it, but it dilutes it in the same way that cocaine with powder dilutes the cocaine, and that has no legal effect. There is a distinction between what this synthetic cannabinoid is on the one hand and marijuana on the other hand, which is, as I said, a cocktail of chemicals that has a different psychological effect because of the interaction of the chemicals, and that's what I think the guidelines are recognizing. So let me turn back to the beginning, which is what is the standard of review? I do think it is plain error, and I'll briefly explain why. The argument made below, well, first, if you look at the actual written filing, there's essentially a government estoppel argument. It was essentially the DEA had issued some publications in 2011 and 2013 that were made for public consumption that said the psychological effect of a synthetic cannabinoid is similar to marijuana, and so the argument was, well, Dr. Trecky's affidavit in this case would say the competitor under 2D1.1, comment 6, can't be right because it contradicts what the DEA said in 2011 and 2013. I don't need to tell you I have arguments wrong because that's not the argument made here. The argument made here is the argument that Judge Bright picked up in a dissent in the Ramos case later, which was to basically take this cascading of naturally occurring plants and say, well, if you have less naturally occurring plant, the ratio drops, and to adopt that argument and make it here, and say, well, that same argument should apply here. That argument just wasn't made in the district court. At the most meta level, sure, it was argued that the competitor should be marijuana, but the reason that it should be marijuana was not made until the appellate brief. Of course, the purpose of plain error review is to build a record on these things, so that's why my friend has to talk to you about the Ramos testimony, because the issue wasn't raised. We didn't get the right testimony. Judge LaPlante didn't have the benefit of the right information to address the argument, which is why we're having to reach out to other cases to say to you those things that are helpful to the argument they want to make now. That, to me, is the classic kind of scenario where you should apply plain error because that should have been raised, discussed, and debated below, not here for the first time. And so that's why I think plain error review is the appropriate standard. If it's not plain error, it's still clear error, which requires a firm and definite conviction that the district court was wrong. Judge LaPlante's view lines up with, I think, all of the decided cases. I'm not aware of any case that has selected one-to-one. Most of them were district court cases. But after he reached his conclusion, Ramos came out and holds in line with the government. So Judge Brey writes a dissent, but the majority opinion is in line with the argument that the government's making here today. So that really sums up the first. There was a procedural error in choosing the one-to-one 67. The second argument is that the one-to-one 67 should have been disregarded because it lacks an empirical foundation. I can't speak to the empirical foundation because the guidelines don't provide us with an empirical foundation. The question is, well, how should that play itself out in a federal sentencing? And I think it should play itself out in a federal sentencing exactly how it happened. A judge is supposed to calculate the guidelines. And at that first step, he's not supposed to make value-based judgments on whether the guidelines are good or bad. But federal sentencing certainly encompasses that idea. And it happens at the variance stage. I think this Supreme Court, this court, have recognized that a district judge can grant a variance based on a policy disagreement with the guidelines. That doesn't seem entirely fair in the argument that Paul is making. I think he's saying that the converter analysis was flawed, those ABC steps that you go through. And because that analysis was flawed, the use of the one-to-one 67 ratio was inept. And that's the procedural error that he's commenting on. He raises the question about the empirical basis for the one-to-one 67. But I think his argument is, for the reasons he stated, the comparator analysis is wrong. That sounds like an effect of the guideline calculation. I think it's both. So I think he absolutely makes that first argument, which is the district court committed a clear error by concluding that under the guideline rubric in the comment, selecting THC was a factually wrong determination. I agree with you. That is argument one. Argument two is, even if that was right, even if he should have selected THC, when the guideline meant it was one-to-one 67 as the comparator you should use, that's crazy, essentially. And the district judge, at step one of a federal sentencing analysis, should have just disregarded it. I think that is his second argument. I think that argument is legally wrong. I think where you deal with that is at the variance stage, where you can disagree as a district judge with the policy underlying a guideline. And by a guideline here, I mean a one-to-one 67 ratio. As to the first question, which is whether THC is the right comparator, that gets back to what we've been talking about, which is what you need to do is isolate the controlled substance. The controlled substance is the chemical that's then sprayed on in their leaves, just like I point to you LSD on water paper. The Supreme Court says the controlled substance is LSD, but the mixture together is LSD sprayed on the carrier medium. His own brief refers to the inner leaves as a carrier medium. It's just a way to get the drug to the person. It has a diluting effect, but that has nothing to do with chemicals. That's just how it's going to be delivered. That's just like cocaine with powder mixed in. That's just like LSD on water paper. We separate that out, and we look only at the chemical. Why does the controlled substance have to be the THC in its pure form? Why couldn't the controlled substance actually be the synthetic compound sprayed onto the carrier? I mean, there is this definition, which comes from the Code of Federal Regulations, which is incorporated in the statute. Any material, compound, mixture, or preparation which contains any quantity of one of the substances here in the synthetic compound. Why would that definition from the Code apply to the plant with the synthetic compound on it? Because the controlled substance is what has the, I think, is what has the psychoactive effect. In synthetic cannabinoids, all you've done is taken a drug, something that has an effect on the brain, and sprayed it on nothing, leaves. It's something that allows you to smoke it, but it doesn't have any effect, which is different than the marijuana. The marijuana is not just this one drug. It is a combination of chemicals that are less potent. Isn't the marshmallow leaf with the synthetic compound sprayed on it, it doesn't meet the definition of a material which contains a quantity of one of the controlled substances, which in this case would be the synthetic compound. So I don't know. I don't think this is an argument that the plant actually makes. So, yeah, a little unfair to raise it with you, but it does. So the notion that you have to treat the controlled substance as the synthetic compound in its pure form, is, I think, somewhat suspect. But what you just read to me had a bunch of things before controlled substance, right? It was a mixture or substance contained. But the guideline itself says figure out what the right controlled substance is, not the mixture or substance. The controlled substance is a thing. I mean, 841 talking about mixture or substance that contains a detectable amount of a controlled substance. The controlled substance is the scheduled drug, the scheduled chemical. The scheduled chemical is THC. Those leaves aren't anything. Those leaves are the water paper. They're just the way to get the chemical that is scheduled to the person. That's how we give it to you so that you can then smoke it, because otherwise it's not usable, like the LSD. But the chemical, the controlled substance, is either the LSD or the THC or the stuff, the synthetic cannabinoids sprayed on the leaf. So I think that's where the focus is, the chemical, not the mixture. The mixture is we don't separate it out for weight purposes. We weigh it all together. That's what Chapman from the Supreme Court speaks to, and I think that's the definition you just read to me. If the Court has no further questions, I think I've made all my points. Thank you, Judge Trier. Thank you. Your Honors, marijuana is different. And marijuana is different because, in one example, Arm & Hammer baking soda isn't a controlled substance. And yet that's what cocaine is cut with or used to make cocaine base, just as an example. Whereas both marijuana and THC and the individual iterations in between are all controlled substances. So when we start with one and remove plant material, we've got a controlled substance, a different controlled substance, a different controlled substance. I don't agree with your premise. Leaves, unadulterated by this spray, are not controlled substances. They're merely plant material. The controlled substance is what's in the spray. I'm addressing marijuana and saying that's what's different from Chapman and 841, is that all of them are controlled substances. All of what are controlled substances? From marijuana, hashish oil, and pure THC. So different from cocaine, cocaine base, heroin, and 841, is that it's not a substance or a mixture containing one scheduled drug. Marijuana, right off the bat, is a scheduled drug. And then the question is, how potent is it? And that's why it's different than the other drugs that are being spoken about today. Does this go to your, the 1 to 168 is irrational? What is this argument in service of? What's the most analogous controlled substance? All right. And when it comes to the what's the most analogous controlled substance, again, the government wants to talk about how marijuana is its own plant cocktail. But what value is that statement when we're talking about pure THC? Everything else is gone. So does the fact that all the other plant material is gone when we talk about THC, does it make that more or less likely that pure THC is the most analogous substance to a plant material with diluted synthetic cannabinoid psychoactive ingredient? And our position is it makes it less likely, because the rest of that plant cocktail, the rest of that material has been removed, making it a lot less like what was seized in this case. When it comes to the plain error review, we'd ask the court to look at pages 94 to 97 of the Joint Appendix and see what sentencing counsel's doing in response to the government's argument. And it is saying, look, by that logic, everything's THC. You can't just say because there's THC in it that everything should be 1 to 167. And that's the closest argument in the district court to what we're arguing now. By that logic that was asserted below, everything would be at the highest ratio. And I think that, obviously, that's procedurally incorrect. Thank you for the court's time. Thank you.